[No. G012907. Fourth Dist., Div. Three. Mar. 10, 1994.]

METROPOLITAN OUTDOOR ADVERTISING CORPORATION,
Plaintiff and Appellant, v.
CITY OF SANTA ANA, Defendant and Respondent.

## COUNSEL

Berg & Berg and Ronald S. Berg for Plaintiff and Appellant.

Edward J. Cooper, City Attorney, and Robert J. Wheeler, Assistant City Attorney, for Defendant and Respondent.

OPINION

SONENSHINE, J.—Metropolitan Outdoor Advertising Corporation appeals after the court denied its petition for peremptory writ of administrative mandamus. We affirm.

I

In 1981, Metropolitan received a "Conditional Use Permit" allowing it to erect a billboard in Santa Ana. When the permit expired, Metropolitan was "responsible for securing removal of the subject sign structure without expense to the City. [And it] agree[d] to City's agents entry upon the subject property to remove the subject sign structure and to reimburse City in full for all costs of such removal . . . in the event [it] fail[ed] to do so."

At the time of expiration, Metropolitan obtained the property owner's consent to maintain the billboard, but the planning commission denied its request for a variance. Its appeal to the city council was also denied; this decision was confirmed during a subsequent meeting.

After a bench trial, Metropolitan's petition for writ of mandate was denied. In support of its judgment, the court issued a detailed statement of decision.

II

Metropolitan incorrectly maintains it possesses a fundamental vested right in the continued use and maintenance of the billboard, mandating our independent review. Its reliance on *Goat Hill Tavern* v. *City of Costa Mesa* (1992) 6 Cal.App.4th 1519 [8 Cal.Rptr.2d 385] is misplaced. In *Goat Hill*, a tavern owner, after receiving a six-month conditional use permit and a three-month extension allowing the addition of a beer garden to his establishment, invested $1.75 million in refurbishment and expansion. The city then denied his renewal application, effectively closing the business. The owner was granted a writ of administrative mandamus which was affirmed on appeal.

As the court stated, " 'Whether an administrative decision substantially affects a fundamental vested right must be decided on a case-by-case basis. [Citation.] Although no exact formula exists by which to make this determination [citation] courts are less sensitive to the preservation of purely economic interests. [Citation.] In deciding whether a right is "fundamental" and "vested," the issue in each case is whether the " 'affected right is deemed

to be of sufficient significance to preclude its extinction or abridgment by a body lacking *judicial* power.' [Citation.]" ' (*301 Ocean Ave. Corp.* v. *Santa Monica Rent Control Bd.* (1991) 228 Cal.App.3d 1548, 1556 [279 Cal.Rptr. 636].)" (*Goat Hill Tavern* v. *City of Costa Mesa, supra,* 6 Cal.App.4th 1519, 1526.) The court continued, "We cannot conclude on these unique facts that [the owner's] right to continued operation of his [or her] business is not a fundamental vested right. This is not, as the city so strongly urges, a 'purely economic privilege.' It is the right to continue operating an established business in which he [or she] has made a substantial investment." (*Id.* at p. 1529.)

 This is not our situation. In *Goat Hill,* the conditional use permit was issued to allow the expansion of a business, with the implicit understanding the permit would be renewable. The court found it was "utterly implausible that [the owner] knowingly gave up all rights to continue operating Goat Hill Tavern in exchange for the opportunity to keep [the] game room expansion open for six months." (6 Cal.App.4th at p. 1529, fn. 4.) In contrast, Metropolitan applied for a conditional use permit so that it could erect and maintain a billboard. When the permit was granted, Metropolitan agreed to be bound by all of its provisions, including removal of the sign after the permit's expiration. There was no implicit understanding the permit would be renewed.

*Goat Hill* is also inapt because there the denial of the renewal would have resulted in the loss of the owner's 35-year-old business. Here, Metropolitan would only be required to remove one of its many billboards. There is no assertion the sign's removal would destroy or even significantly injure Metropolitan's business. Rather, Metropolitan agreed to be bound to the conditional use permit since it considered the permit's terms and conditions advantageous. Metropolitan knew it would have to remove the billboard.[1]

III

 Metropolitan, relying on Business and Professions Code section 5412,[2] maintains it is entitled to compensation because the billboard's removal is "compelled."

Section 5412 states in pertinent part, "Notwithstanding any other provision of this chapter, no advertising display which was lawfully erected

---

[1]There is no dispute Metropolitan agreed to abide by the terms of the conditional use permit. Surely Metropolitan balanced the costs of erecting, maintaining and removing the billboard against the economic benefits derived from the sign over the life of the conditional use permit.

[2]All statutory references are to the Business and Professions Code unless otherwise specified.

anywhere within this state shall be compelled to be removed, nor shall its customary maintenance or use be limited, whether or not the removal or limitation is pursuant to or because of this chapter or any other law, ordinance, or regulation of any governmental entity, without payment of compensation . . . except as provided in Sections 5412.1, 5412.2, and 5412.3 . . . . [¶] This section applies to all displays which were lawfully erected in compliance with state laws and local ordinances in effect when the displays were erected if the displays were in existence on November 6, 1978, or lawfully erected after November 6, 1978, regardless of whether the displays have become nonconforming or have been provided an amortization period."

The statute's legislative history provides the answer: "Existing law prohibits local governmental entities from compelling the removal of any advertising display which was lawfully erected and still in existence on November 6, 1978, pursuant to the Outdoor Advertising Act or any statute, ordinance, or regulation. The provision *does not apply to displays which were erected pursuant to a written agreement with a governmental entity providing for the removal of the displays after a fixed period of time.*" (Legis. Counsel Dig., Assem. Bill No. 1353, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 165, italics added.)

Ours is the exact situation contemplated by the Legislature. Moreover, it would be absurd to interpret the city's present action as a "compelled" removal. To do so would reward advertisers who ignore their contractual obligations. If we were to follow Metropolitan's reasoning, cities would be unable to enforce any time restrictions. Advertisers who received permits would effectively have a perpetual license to keep the billboard in place.

The judgment is affirmed. Respondent shall recover its costs on appeal.

Sills, P. J., and Crosby, J., concurred.